UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                          :
KEITH A. HOLMES,                          :
                                          :
                        Plaintiff,        :      09 Civ. 874 (TPG)
                                          :
            – against –                   :      **OPINION**
                                          :
EXPERIAN INFORMATION SOLUTIONS,           :
INC.,                                     :
                                          :
                        Defendant.        :
------------------------------------------x

Plaintiff Keith A. Holmes brings this pro se action alleging that Experian Information Solutions, Inc. ("Experian") placed inaccurate information in his credit report, which adversely impacted his "credit score" and prevented him from obtaining financing. Holmes's claim is for negligence.

Experian moves for summary judgment. The motion is granted.

## FACTS

The following facts are undisputed except where otherwise indicated.

Holmes is an entrepreneur conducting business in real estate acquisition and development. He lives in New York and has invested in various properties throughout New York State. Experian is a company that collects and disseminates information used to determine credit scores. Its headquarters are in California.

In January 2005, a service called Equifax reported that Holmes had a credit score of 706. This credit score, Holmes alleges, was high enough to enable him to obtain credit to finance his projects. However, at some point in the spring of 2005, Experian erroneously noted two default judgments from a state court in Bronx County from January and April of that year in Holmes's credit file. The judgments, totaling approximately $13,000, listed "Keith P. Holmes, Sr." as the defendant, who had a different home address and social security number from plaintiff Holmes. The judgments were not against plaintiff Holmes.

By August Holmes's credit score, as reported by Experian, had declined to 536. At this time, Holmes's brother told Holmes that there were two judgments referred to in credit information about Holmes. Holmes then requested a copy of his credit report from Kroll Factual Data, a supplier of credit information. Kroll faxed Holmes a "residential merged credit report" (the Kroll Report) that drew information from three separate credit reporting agencies including Experian. The judgments were listed in the Kroll Report. Holmes has testified that he spoke to someone at Kroll who said that the information about the judgments came from Experian. This was indeed the case.

Holmes contends that his credit score declined between January and August 2005 solely because of the erroneously listed judgments. Experian disputes this and asserts that the record shows various other unfavorable circumstances about Holmes's financial condition in 2005.

In late 2005, Holmes contacted Experian and asked that the judgments in Keith P. Holmes's name be removed from his credit file. Experian received Holmes's request on December 5, 2005, and removed the judgments the next day.  Holmes claims that Experian made no effort to contact other companies who may have placed derogatory information about the two judgments in Holmes's credit report.  However, Holmes has offered no evidence that any other credit reporting companies actually reported the two judgments.

Holmes claims that it was necessary for him to refinance his existing obligations in August 2005.  He also asserts, however, that he did not try to obtain refinancing prior to February 2006, when he attempted to refinance his adjustable rate mortgage on his home. Although Holmes did not apply for credit while the erroneous judgments were on his Experian report, Holmes claims that individuals with bad credit are not supposed to attempt to refinance until these issues are resolved and their credit has improved.  Holmes states that "applying for financing with damaged credit is an exercise in futility."

In February 2006, Holmes applied for credit from the lender Centex Home Equity Company, LLC.  He wanted to refinance the adjustable rate mortgage.  The rate on this mortgage was set to readjust from 6.00% to 11.00% in April of 2006.  Holmes's credit application was denied based, in whole or in part, on a credit report from "First American Credco."  The reason for this denial was "Value or Type of Collateral not

Sufficient." Holmes claims that his inability to refinance in August 2005 because of his low credit score caused him to fall behind on payments, which caused Centex Home Equity to deny his February 2006 credit application.

Holmes alleges that as result of Experian's negligence, he was unable to refinance his residence and two investment properties in addition to losing other real estate investment opportunities. However, Holmes has not provided evidence that First American Credco. or Centex Home Equity Company, LLC knew about the two default judgments that Experian had already removed from his credit file.

<u>The Present Action</u>

On December 28, 2008, Holmes commenced the present action in Supreme Court, Bronx County, alleging that Experian's negligence caused him damages of at least one million dollars by hindering his ability to refinance his existing obligations. Experian removed the action to federal court on January 30, 2009, contending that Holmes's state law claim was "controlled by the Fair Credit Reporting Act ('FCRA'), 15 U.S.C. § 1681 <u>et</u> <u>seq</u>."

On November 15, 2010, Experian filed its motion for summary judgment.

Although, as just indicated, Experian referred to this action as being controlled by the FCRA, the sole cause of action in the complaint is a claim of negligence, without reference to the FCRA.

**DISCUSSION**

Subject-Matter Jurisdiction and the Propriety of Removal

Experian removed this case, in which Holmes pleaded a state law claim, on the grounds that Holmes's state law claim was "controlled by the Fair Credit Reporting Act." However, Experian has cited no authority supporting the proposition that state law causes of action are subject to federal jurisdiction under the FCRA.

"[A] plaintiff's suit does not arise under federal law simply because the defendant may raise the defense of ordinary preemption." Sullivan v. Am. Airlines, 424 F.3d 267, 273 (2d Cir. 2005). Accordingly, the fact that Experian is raising a federal preemption defense to Holmes's state law claims does not make those state law claims removable. However, "[u]nder the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims - i.e., completely preempted." Id. at 272. "When a plaintiff raises such a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." Id.

Experian has not provided any authority for the proposition that the FCRA is a statute that completely preempts state law and thus provides for federal subject matter jurisdiction. Many federal statutes –

such as the FCRA – expressly preempt state law and thus provide for a federal preemption defense, but the Supreme Court has only identified three statutes that completely preempt state law and allow for the removal of preempted state law causes of action: § 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185; § 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a); and §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85- 86. Id. at 272.

Although, as will be discussed below, the FCRA does provide Experian with a defense of preemption in this case, courts have regularly found that the FCRA does not provide a basis for removal of state law claims pursuant to the complete preemption doctrine. See Chase Bank USA, N.A. v. Duran, No. C-06-2258 MMC, 2006 U.S. Dist. LEXIS 20154, at *2-3 (N.D. Cal. Apr. 5, 2006); King v. Retailers Nat'l Bank, 388 F. Supp. 2d 913, 916-17 (N.D. Ill. 2005); Swecker v. Trans Union Corp., 31 F. Supp. 2d 536, 540 (E.D. Va. 1998); Harper v TRW, Inc., 881 F Supp 294, 299-300 (E.D. Mich. 1995); but see Williams v. Met. Life Ins. Co., No. 94 Civ. 3791 (CSH), 1994 U.S. Dist. LEXIS 13682, at *7 (S.D.N.Y. Sep. 26, 1994) (allowing for removal of a case because of FCRA preemption, without discussing the complete preemption doctrine).

This case was improperly removed because the FCRA does not qualify for the complete preemption removal doctrine. However, the court will not remand this suit because the court has another basis for

subject-matter jurisdiction. "[W]hen a suit is removed prematurely, the district court may proceed if it has subject-matter jurisdiction at the time it enters judgment." City of Joliet v. New West, L.P., 562 F.3d 830, 833 (7th Cir. 2009). Here, although Experian's removal based on complete preemption was improper, the court has diversity jurisdiction over this case. It is undisputed that Holmes is a citizen of New York and Experian is a citizen of California.

FRCA Preemption of Holmes's Common Law Negligence Claims

Experian argues that summary judgment is appropriate because Holmes's state law claim for negligence is preempted by the FCRA.

Although, as discussed above, the FCRA does not qualify for the complete preemption removal doctrine, the FCRA can still provide a basis for ordinary defensive preemption. The defense of preemption may arise in any of three ways: (1) express preemption by Congress, (2) implied preemption where federal law is so comprehensive that Congress left no room for supplementary state regulation, and (3) preemption based on an actual conflict between state law and a federal statute. Bedford Affiliates v. Sills, 156 F.3d 416, 426 (2d Cir. 1998).

In the present case, there is express preemption by the FCRA with respect to Holmes's negligence claim. The statute provides in relevant part:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency

- 7 -

> . . . based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).  Sections 1681n and 1681o are irrelevant for present purposes.  The statute thus provides that there can be no action based on negligence (and certain other common law theories), with respect to the reporting of credit information, brought against a consumer reporting agency, except as to false information furnished with malice or willful intent to injure.

The court is constrained to say that the treatment of negligence in the statute is an oddity because malice and willful intent to injure involve intent, not mere negligence.  However, the statute says what it says.

Section 1681h(e) applies to Holmes's cause of action because Holmes's claim is for negligence.  This is made clear in his various descriptions of his claim.  To describe Experian's conduct, he uses the words "carelessness, recklessness, and negligence," and refers to a "breach of duty owed," which "was the proximate cause of [Holmes's] substantial monetary injuries."  Later in his complaint Holmes repeatedly seeks damages incurred "[d]ue to Defendant's negligence," "due to Experian's negligence," and "as a direct result of Experian's negligence."  Holmes introduces the theory that his claim is actually a products liability claim under New York law.  He refers to this case as a "product negligence and liability case" and argues that Experian's design "raises the issue of negligence under New York State Product Liability Law."

Thus, there can be no doubt about the fact that Holmes is attempting to assert a negligence claim under New York law. However, Section 1681h(e) prohibits the bringing of a negligence claim, "except as to false information furnished with malice or willful intent to injure such consumer." Holmes makes no allegation, and surely makes no factual showing, of any malice or willful intent to injure on the part of Experian in connection with the erroneous noting of the two judgments. Thus, the claim of Holmes, as made by him in this case, is prohibited by the express terms of Section 1681h(e) and must be dismissed.

Of course, there are provisions of the FCRA which describe in detail the elements of various causes of action under the statute – not common law negligence, but claims under the statute. <u>See</u>, <u>e.g.</u>, 15 U.S.C. § 1681e(b). However, Holmes does not attempt to bring his claim under any of these provisions.

It is perhaps useful to add that, if Holmes had sued in this case under the statutory provisions of the FCRA, such suit would have been time-barred. The FCRA has a two year statute of limitations that begins running at "the date of discovery by the Plaintiff of the violation that is the basis of such liability." 15 U.S.C. § 1681p. Holmes became aware of the default judgments noted in his Experian file in August 2005 when he received the Kroll Report. The present action was commenced on December 23, 2008, well over two years after he learned of Experian's error.

## CONCLUSION

For the foregoing reasons, the court grants Experian's motion for summary judgment dismissing Holmes's action.

This opinion resolves document numbers 16 and 27 on the docket.

SO ORDERED.

Dated: New York, New York
       September 30, 2011

_____
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/11